## COLLINS v. MORRIS.
### No. 1163.

Court of Appeal of Louisiana. First Circuit.
June 30, 1933.

Haas & Haas, of Opelousas, for appellant.

George K. Perrault, of Opelousas, for appellee.

ELLIOTT, Judge.

Arthur P. Collins proceeded by executory process on a mortgage note for $654.50 against the estate of Elijah Morris, serving the notice to pay on Aurelia Morris, widow in community of the deceased. The movable and immovable property, which he sought to have sold, will be described later.

Aurelia Morris, alleging that the note and mortgage had been paid, obtained an injunction staying the sale.

Collins, answering her petition, admitted having received sums amounting to $789.32, but denied that same had been received as credits on said note. He alleges, in his answer, that the sums received had been applied to general indebtedness due him by Elijah Morris, contracted since the execution of said note. In article 7 of his answer he admits that there may be some credits due on the note, stating in an estimative way that credits to the extent of $125 or $130 may be due thereon.

He enumerates in his answer various sums of money, which he alleges he advanced to said Morris since the execution of said note. In article 15 of his answer he substantially avers that she at most has a right only to restrict the amount for which said property can be sold to satisfy the amount actually due him by said Morris and costs.

The lower court, after hearing the evidence, for reasons assigned in writing, rendered judgment in favor of Aurelia Morris as prayed for. Collins has appealed.

The record shows that Elijah and Aurelia Morris executed and signed the note for $654.50, dated December 8, 1930, and delivered it to said Collins. The note was made payable September 1, 1931, and stipulates 8 per cent. interest from date and 10 per cent. attorney's fees, if sued on or placed in the hands of an attorney for collection.

They secured this note by an authentic act of mortgage of same date as the note, bearing on: "a certain lot or parcel of ground, situated in what is know as the Colorado Southern Addition to The City of Opelousas, Louisiana, and being described as Lots 25 and 26 of Block 4 of said addition, situated on the North side of Blanchard Avenue," 4 mules, a cow and calf, and 1925 model Chevrolet touring automobile.

Collins in addition to this mortgage caused the said Morris to procure fire insurance on his dwelling, situated on the above-described lots, in amount $600, and to make the policy in case of loss payable to Collins. This dwelling on or about January 17, 1931, was destroyed by fire and Collins received $500 on said account. The exact date when this sum was received does not appear, but the record shows that it was paid by means of a draft, and the date is approximately established by reference to the date of an act of pledge.

Elijah and Aurelia Morris are shown to have executed a note for $600 on February 11, 1931, which they secured by an act of pledge of same date as the note and delivered same to said Collins. Collins, asked the date of this pledge, replied that it was "not long after the draft was cashed." As the act of pledge was passed February 11, 1931, and the amount was received previous to that time, it thus appears that it was likely received two or three weeks after the fire.

Collins also admits in his answer and as a witness that he received $189.32 as the proceeds of two-thirds interest in eleven bales of cotton, which the Morris family made in 1931 on the J. L. Comeaux place and also received from Aurelia Morris 3 head of cattle at an agreed valuation of $100, making a total of $789.32. The exact date when the proceeds of the cotton and the 3 head of cattle were received does not appear, but it seems likely that it was along about the time of, or very soon after, the maturity of the note. The fact that the note for $654.50 and the note for $600 were both made payable September 1, 1931, also indicates that some

connection may have existed between the two notes in the matter of payment.

■ Aurelia Morris opened the trial by calling Collins for cross-examination, upon which he, without objection, stated, concerning the consideration of the note on which he had sued out executory process, that 380 or odd dollars, which went to make up the amount of the note, was a debt due by Morris to Avie Bordelon, which he had paid for Morris, and that the balance of the amount was for mules and an old debt he says Morris had gotten behind with him, but the amount, which was on account of mules and the amount, which was old debt, was not stated. The exact sum paid to Bordelon could likely have been established in some other way, but at the time of the trial, it was likely that there was no way in which Aurelia Morris could show how the balance of the note was arrived at.

Collins in his petition for executory process on this note claims the full amount, principal, interest, and attorney's fees, called for therein; but when Aurelia Morris enjoined his process alleging payment, he, in answer to her petition, admits that the crop should have been applied thereon. We quote him on this subject as follows:

"Q. But the question I asked is whether you placed any credit whatever on the back of the note? A. I couldn't until the cotton was sold.

"Q. You admit there is no credit on the back of the note? A. Sure.

"Q. You further admit you show no written statement of the indebtedness you claim existed between Elijah Morris and yourself? A. As I first said, the only thing I have is the notes and I didn't give they (the) credit on the back of the note for the amount I gathered from the crop because I was waiting for the cotton to go up and when it did go up, the old lady came and I told her there was so much balance due and she seemed to have it balled up and I couldn't agree with her at all."

Collins is not sure as to the exact amount' of credit to which the note is entitled, but states in an indefinite and estimative way it was not more than $125 or $130, and urges in his answer that the petitioner, Aurelia Morris, "has no right to enjoin the said sale of said property advertised for Dec. 10th, 1932 but at most has a right only to restrict the amount for which said property can be sold to satisfy the amount actually due by said Morris to respondent, which in all events is an amount greater than the sum of $524.00, exclusive of interest, attorney's fees and costs."

He testifies that he deposited the $500 in the bank in his own name, yet he says it remained the property of Morris, and that Morris used all of it for the purpose of buying mules and making his crop. That he drew it out and delivered it to Morris as needed in making his crop.

Collins enumerates in his answer and as a witness the various amounts that he claims to have advanced to Morris after the settlement evidenced by the note of December 8, 1930. He says he let him have $10 the day following the fire; in a few days afterwards $140; and in about a month afterward $100. Also $10 for the purpose of moving a family from near Welch to the farm Morris was cultivating; paid Ernest Lalonde $165.50 for groceries for Morris; paid $18 on account of an automobile license; taxes in amount, $9.-90; blacksmith bills, $15.50; and after Morris was killed he let his widow have $25 on account of funeral expenses, and also advanced her some small sums on one or two occasions to help defray the expense of picking the cotton. These sums amount in the aggregate to $712.18. All of these sums he claims to have advanced to Morris at different times by giving him the cash. That after the death of Morris, the sums advanced to the widow were given in cash.

Collins is not corroborated as to any of the sums, except as to $165.50, which he says he paid to Ernest Lalonde. Lalonde says that Morris brought him orders from Collins, mostly for groceries but a little cash, and that he filled orders up to $165.50, commencing about February or March and continuing about four months. Lalonde says that Morris came, as a rule, about once a month and got $30 or $40 worth of groceries at a time, and that Collins paid him for the groceries. Lalonde produced no account, no orders, but testified from memory. He says that Collins told him not to put his name on the books.

Collins is a business man and must be charged with knowing that accounts, written data, and memoranda should be kept from day to day, showing advances of money and merchandise, such as he claims to have advanced to Morris, yet he produced no account, data, nor memoranda, showing same, but depended on his memory as to amounts more than a year after the advances are claimed to have been made. Elijah and Aurelia Morris were negro tenants and share croppers on a farm belonging to J. L. Comeaux. On July 11, 1931, about the time his crop was finished, Elijah Morris was, by somebody, shot and killed. Consequently, when Collins commenced his executory proceeding there was nobody in position to testify concerning the indebtedness, which he claimed they owed him, differently from what he said about it.

Aurelia admitted that her husband brought to the house groceries, which he informed her he had obtained from Collins. Says that he brought groceries for himself and his two sons, both of whom had families and helped

him make the crop. She admits that three families received supplies from Collins, but says that, save what they received to eat, her husband brought home practically nothing.

Charlie Morris, one of the sons of Elijah Morris, says that he and his brother received supplies from their father and helped him make the crop, and that he got nothing except the food which he ate.

The indebtedness, which Collins claims of the estate of Elijah Morris as resulting from advances since the note of December 8, 1930, is uncertain and indefinite in the matter of amount. There is no claim that at the time the $500, $189.32, and $100 were received, there was any agreement as to the debt to which the payments were to be imputed. The mortgage debt for $654.50 called for by the note of December 8, 1930, is the debt which the estate of Elijah Morris had the most interest in discharging. It should be paid, and for that purpose and to that extent the sum of $789.32 was properly imputed and applied as was done by the lower court in perpetuating the injunction. The amount received by Collins, exceeding and overpaying the note of December 8, 1930, we leave under the pleadings and the evidence as we find it and as was done in the lower court.

We are not aware of any case in which the facts were like the present. The facts in Cutler v. Succession of Collins, 37 La. Ann. 95, were different, but we excerpt from the opinion therein a statement which seems appropriate: "The testimony in this case being that of the plaintiff, against a dead man, is of the weakest kind and is not entitled to sufficient weight to warrant a judgment for the plaintiff. To prevail, it should have been strengthened by strong, or at least reasonable, additional independent proof."

For these reasons, the judgment appealed from is affirmed. The appellant, Collins, to pay the costs in both courts.